IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BURT HILL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 09-1285 |
| | ) | |
| v. | ) | Magistrate Judge Bissoon |
| | ) | |
| HAYDAR HASSAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff's Motion to Compel discovery (Doc. 33) will be denied, consistent with the instructions below.

In an Order dated November 18, 2009, the Court held that Defendants' Fifth Amendment privilege against self-incrimination was not implicated by the criminal proceedings against them in the U.A.E. *See id.* (Doc. 30) at 2-3. Applying Third Circuit law, the Court concluded that Defendants' "fear of foreign prosecution, without more, [wa]s not a sufficient basis for [an] invocation of [the] privilege." *Id.* at 2 (internal quotations omitted). The Court also observed that, under the same binding precedent, there is no clear "exception" for cases where evidence adduced in U.S. criminal proceedings "will be shared with a foreign government" for the purposes of "joint prosecution," and that, even if such an exception exists, it has not been triggered here because there is "no indication that [domestic] charges have been requested or filed." *Id.* at 2-3. For these reasons, and because of concerns regarding international comity and enforceability, the Court declined to provide additional protections to Defendants based on their privilege against self-incrimination.

Since the November 18th Order, Defendants have persisted in their refusal to produce full responses to Plaintiff's interrogatories and document requests, again citing their rights under the Fifth Amendment.  *See generally* Pl.'s Mot.

To the extent that Defendants' assertions of privilege rely in any way on the U.A.E. proceedings, the Court reiterates and reaffirms its November 18th ruling.  In response to Plaintiff's Motion to Compel, however, Defendants raise additional issues and arguments regarding their invocation of the Fifth Amendment in connection with potential criminal liability in the United States.  *See generally* Defs.' Opp'n Br. (Doc. 35) at 1-2, 3-7.  To this limited extent, Defendants' positions warrant further attention.

Although the lack of pending criminal charges in the United States supports a denial of Fifth Amendment protection regarding the U.A.E. investigation, *see* discussion *supra*, it is not determinative of Defendants' rights in connection with potential domestic charges.

The "privilege against self-incrimination protects any person, an accused or a witness, from being compelled to speak against his penal interest."  S.E.C. v. Leach, 156 F. Supp.2d 491, 493 (E.D. Pa. 2001) (citation omitted).  The privilege extends to civil proceedings, and it applies not only at trial, but during the discovery process as well.  S.E.C. v. Graystone Nash, Inc., 25 F.3d 187, 190 (3d Cir. 1994).

Fifth Amendment protection attaches "not only to answers that would in themselves support a conviction[,] . . . but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant."  Leach, 156 F. Supp.2d at 493 (citations to quoted sources omitted).  The privilege against self-incrimination, moreover, is not preconditioned upon the existence of pending criminal charges.  Izen v. Catalina, 256 F.3d 324, 329 (5th Cir. 2001) (so long as claimant "reasonably apprehends a risk of self-incrimination," protection applies

even "though no criminal charges are pending against him . . .[,] and even if the risk of prosecution is remote") (citations to quoted sources omitted).  Indeed, "[o]nce the court determines that the answers requested would tend to incriminate the witness, it should not attempt to speculate whether the witness will in fact be prosecuted." Leach, 156 F. Supp.2d at 494 (citations to quoted source omitted).

The Court agrees with Defendants that, in theory, Plaintiff's allegations may lead to reasonable apprehensions of self-incrimination for the purposes of domestic criminal charges. Count IV of the Complaint alleges violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.  Although civil remedies are available under the CFAA, courts uniformly have recognized that the statute primarily is criminal in nature.  *See, e.g.*, P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC., 428 F.3d 504, 511 (3d Cir. 2005) (acknowledging "the criminal thrust of the [CFAA] section" permitting civil actions); A.V. ex rel. Vanderhye v. iParadigms, LLC, 562 F.3d 630, 645 (4th Cir. 2009) ("the CFAA is primarily a criminal statute").  Under analogous circumstances, courts have found defendants' potential criminal liability sufficient to implicate the Fifth Amendment.  *See, e.g.*, Leach, 156 F. Supp.2d at 495 (agreeing with defendant that, because "the SEC alleged that he engaged in securities fraud for which criminal penalties [were] available, all facts relevant to the SEC's civil suit [were] also relevant to a possible criminal proceeding"); *see also generally* U.S. v. U.S. Currency, 626 F.2d 11, 14-15 (6th Cir. 1980) ("a prosecutor may not circumvent a person's privilege against self-incrimination by invoking a civil remedy to enforce a criminal statute") (citation to quoted source omitted).[1]

---

[1] Likewise, the Court agrees with Defendants that Plaintiff's other allegations conceivably may support criminal charges for conversion, embezzlement, aiding and abetting embezzlement

3

As referenced above, Defendants' assertions regarding their privilege against self-incrimination are tenable in the abstract, but they are insufficient in the details. More exacting standards apply regarding Defendants' refusal to produce documents, and to provide adjudicable invocations of the Fifth Amendment in response to interrogatories, both of which will be addressed below.

    A.    <u>**Plaintiff's Requests for Production of Documents**</u>

To the extent Defendants believe that the content of their documents is protected under the Fifth Amendment, they are mistaken. As the Court of Appeals for the Third Circuit has explained:

> A witness cannot avoid compliance with a [document request] merely by asserting that the item of evidence which he is required to produce contains incriminating writing, whether his own or that of someone else. . . . <u>If the document's preparation was voluntary, the fact that production [is] compelled . . . does not mean that any pre-existing incriminating contents were compelled testimonial communications within the meaning of the privilege</u>. . . . A witness who produces preexisting documents . . . does not testify as to all facts which the documents themselves may reveal. . . . <u>Since there has been no compelled testimonial communication, whether the contents of the documents may possibly have a tendency to incriminate is not relevant</u>.

<u>Matter of Grand Jury Empanelled February 14, 1978</u>, 603 F.2d 469, 476-77 (3d Cir. 1979) (citations and internal quotations omitted, emphasis added).[2]

---

or theft. C*ompare* Defs.' Opp'n Br. at 6-7 *with* Compl. at Counts II, III (alleging conversion of "funds and resources," including "[U.S.] dollars") *and* XII (civil conspiracy).

[2] Although the Third Circuit decision cited above arose within the context of a grand jury subpoena, *see id.*, no meaningful distinction can be drawn for the purposes of Plaintiff's discovery requests. *See, e.g.*, <u>In re DG Acquisition Corp.</u>, 151 F.3d 75, 79-80 (2d Cir. 1998) (applying "testimonial communications" standard within context of civil bankruptcy proceeding); <u>Bayview Loan Servicing, LLC v. McNaughton</u>, 2007 WL 2433996, *1-2 (W.D. Mich. Aug. 22, 2007) (same standard within context of discovery requests in civil action);

Defendants' Fifth Amendment rights may be implicated only if "the very act of producing [their] documents has communicative aspects which rise to the level of a testimonial communication, as where merely acknowledging possession of the documents would be an incriminating admission."  *See id.* at 477 (citation omitted); *see also* U.S. v. Hubbell, 530 U.S. 27, 37 n.19 (2000) (witness's production of documents may constitute protected testimonial communication where production "would admit that the papers existed, were in his possession or control, and were authentic") (citations and internal quotations omitted).

How Defendants can show that their production would be testimonial is difficult to imagine.  Defendants "have made repeated offers to [Plaintiff] that it can have access to view [the allegedly protected] documents in a secure location in [Defense] counsel's office, upon assurances that [Plaintiff] will not retain and disseminate copies."  *See* Doc. 37 at ¶ 19. In addition, Defendants have produced a privilege log identifying "approximately 400 pages of documents" withheld on the basis of "privilege against self-incrimination."  *See* Pl.'s Mot. at ¶ 4. Through their conduct, Defendants have admitted the existence of allegedly privileged materials, and that such materials are within their possession or control.  Likewise, it seems highly implausible that Defendants can, in good faith, object to the authenticity of documents they have offered for Plaintiff's viewing and have identified in their privilege log.[3]

To the extent that Defendants have a legitimate basis for withholding the production of any allegedly privileged document, they must show more than they have thus far.

---

ACLI Int'l Commodity Servs., Inc. v. Banque Populaire Suisse, 110 F.R.D. 278, 285-86 (S.D.N.Y. 1986) (same).  To the extent that Defendants voluntarily generated documents, before and outside the scope of Plaintiff's discovery requests, no compelled testimonial communication is apparent.

[3] Assuming Defendants' production of any document would, in fact, be testimonial in nature, they also must show why it creates a reasonable apprehension of self-incrimination. *See* discussion *infra* regarding Defendants' responses to interrogatories.

Witness "say-so does not of itself establish the hazard of self incrimination,"[4] and the "determination is a fact intensive inquiry that must be done by the court on a document [by] document basis." U.S. v. Worley, 2009 WL 2496365, *2 (M.D. Pa. Aug. 14, 2009) (citation omitted).

In view of these standards, should Defendants persist in their refusal to produce any documents previously withheld under the privilege against self-incrimination, they shall submit them to the Court for *in camera* review. *See id.* at *3 (ordering same). For each allegedly protected document, Defendants also must submit a written statement detailing why their withholding is justified under the Fifth Amendment. *See id.* Critically, Defendants must bear in mind that "[t]he relevant inquiry . . . is not whether the content of the document[] is incriminatory, [but] whether the testimony inherent in the act of producing [the] document is incriminatory." *See id.*[5]

### B.  Defendants' Interrogatory Responses

Responses to interrogatories clearly may fall within the privilege against self-incrimination. *See* Leach, 156 F. Supp.2d at 494 (recognizing same). The question is whether Defendants have made legitimate invocations.

---

[4] Donovan v. Spadea, 757 F.2d 74, 78 (3d Cir. 1985) (citation to quoted source omitted).
[5] Given Defendants' identification of allegedly privileged documents, and their agreement to allow Plaintiff's inspection subject to certain restrictions, Defendants may wish to consider whether judicial review is preferable to reaching an alternative agreement with Plaintiff. Should any documents been deemed outside the scope of the Fifth Amendment, this Court cannot control the effect or influence that such a ruling, if ultimately uncovered, may have on existing or future criminal investigations. To the extent that any documents are deemed protected, moreover, Plaintiff surely would be within its rights to seek a negative inference based on Defendants' invocation of the privilege against self-incrimination. *See* discussion *infra* in text.

Plaintiff takes particular exception to Defendants' response to Interrogatory No. 5, which asks: "Identify all addresses at which you have resided or stayed, whether temporarily or permanently, since May 14, 2009. . . ." *See, e.g.,* Doc. 33-3 at pg. 6, ¶ 5. In response, Defendants have stated:

> [A]s a citizen of the United States, [Defendant] specifically objects to providing such information as it could result in substantial hardship and prejudice to [Defendant] in the event that information is disclosed to authorities in Dubai, U.A.E. and, in turn, used by the authorities against [Defendant] and/or his family with respect to criminal charges filed by [Plaintiff] against [Defendant] in Dubai, U.A.E.

*Id.*

Plaintiff is correct that, to the extent Defendants purport to invoke the Fifth Amendment based on the U.A.E. investigation, this Court already has rejected their position. As reaffirmed above, the U.A.E. proceedings offer no viable basis for Defendants' invocation of their privilege against self-incrimination. *See* discussion *supra*.

Otherwise, Defendants' responses to Plaintiff's interrogatories constitute blanket assertions of Fifth Amendment privilege. *See, e.g.*, Doc. 33-3 at ¶¶ 2, 4, 6, 7, 8, 11, 12 (stating merely that Defendant "asserts his privilege against self-incrimination"). Such responses are insufficient under the law.

"[A] witness cannot relieve himself of the duty to answer questions . . . put to him by a mere blanket invocation of the privilege." National Life Ins. Co. v. Hartford Acc. & Indem. Co., 615 F.2d 595, 598 (3d Cir. 1980). *Id.* Rather, the claimant must place before the court enough information to "effectively determine whether a responsive answer to [the] question or an explanation of why it cannot be answered might be incriminating." *Id.* (citation to quoted source omitted); *accord* Foley v. Juron Assocs., 1986 WL 13030, *2 (E.D. Pa. Nov. 18, 1986)

(finding witness's "one and a half page response to the plaintiffs' interrogatories" insufficient "to assist the court in determining whether his refusal to answer a particular discovery request [was] justified") (citations omitted).  Like their objections to producing documents, Defendants' assertions of privilege regarding Plaintiff's interrogatories must be analyzed "on a question-by-question" basis.  *See* <u>U.S. v. Trenk</u>, 2006 WL 3359725, *3 (D. N.J. Nov. 20, 2006) (citations omitted), *order vacated in part on other grounds* in <u>U.S. v. Trenk</u>, 2007 WL 174327 (D. N.J. Jan. 22, 2007).

Having reviewed each of the interrogatories to which Defendants purportedly have invoked the Fifth Amendment, the Court finds their submissions insufficient to demonstrate that protection is warranted.

Interrogatory No. 2 asks Defendants to "[i]dentify all [p]roposals for [a]rchitectural and/or [e]ngineering [s]ervices that you, or any entity with which you are [a]ffiliated, has submitted since May 14, 2009."  *See, e.g.*, Doc. 33-3 at ¶ 2.  Why a response to this inquiry would threaten self-incrimination in the United States is not readily apparent.  Although Defendants have posited that Plaintiff's allegations may support domestic claims for embezzlement, theft, and conversion, it is unclear how their responses may "furnish a link in the chain of evidence needed to [criminally] prosecute" them.  *See id.*; *see also at* ¶ 4 (asking Defendants to identify "all [c]ommunications that [they] have had with any current or former Burt Hill client or client prospect").

Interrogatory No. 5, which asks Defendants to identify all addresses at which they have resided or stayed since May 14, 2009, provides no evidentiary link to domestic crimes conceivably evinced in Plaintiff's Complaint.  Nor does Defendants' identification of "all entities

with whom [they] have been [a]ffiliated since May 14, 2009" appear to implicate the laws of the United States.  *See, e.g., id.* at ¶ 6 (Defs.' resp. to Interrog. No. 6).

The remainder of Defendants' blanket assertions provide no meaningful bases upon which the Court may conclude that their Fifth Amendment rights have been implicated. *Compare, e.g.*, Defs.' Responses to Interrogs. 7 & 8 (asking Defendants to identify communications with current and former employees of Plaintiff, and any such employees Defendants have offered to hire) *with* Compl. at ¶¶ 81-81 *and* Count IX (claiming breach of contract based on Defendants' "[letter] agree[ment] . . . not [to] engage in any communications with [Plaintiff's] employees").

In sum, Defendants' current interrogatory responses provide insufficient grounds for the Court to fulfill its "juridical responsibility of objectively assessing whether [their] silence is justified." National Life, 615 F.2d at 598.  Before any Fifth Amendment privilege may attach, Defendants must clarify the nature and bases of their assertions.  Should Defendants' elaborations regarding interrogatory responses prove unsatisfactory, the Court also may entertain the prospect of an evidentiary hearing.  *See* Trenk, 2007 WL 174327 at *7 (ordering parties to appear for evidentiary hearing to resolve Fifth Amendment privilege claims).

Given Defendants' cognizance "of the value of expeditious discovery in civil matters," *see* Doc. 35 at 7, the Court must question whether expansive judicial review of their asserted Fifth Amendment privileges is preferable to the parties attempting to amicably resolve their disputes.  A stipulated resolution also may help Defendants avoid the potential adverse consequences of successfully asserting their privilege against self-incrimination.  *See* Graystone Nash, 25 F.3d at 190 (unlike in criminal cases, "reliance on the Fifth Amendment in civil cases may give rise to an adverse inference against the party claiming its benefits," and "[u]se of the

9

privilege . . . may, therefore, carry some disadvantages") (citation omitted); *see also, e.g.*, Sentinel Trust Co. v. Namer, 1998 WL 887287, *3 (6th Cir. Dec. 9, 1998) (affirming trial court's grant of preliminary injunction, and holding that, in evaluating likelihood of success on merits, "the district court . . . properly considered the fact that [defendant] refused to answer certain questions" based on Fifth Amendment privilege); S.E.C. v. Princeton Econ. Int'l. Ltd., 1999 WL 997149, *3 (S.D.N.Y. Nov. 3, 1999) (granting preliminary injunction, in part, based on adverse inference attaching to defense witness's invocation of privilege against self-incrimination).[6]

In light of the foregoing, the Court will afford the parties additional time to confer and discuss whether the scope of their remaining disagreement may be narrowed or eliminated. To the extent the parties are unable to reach agreement, Defendants shall comply with the directives in this Order consistent with the deadline below.

For all of the reasons stated above, Plaintiff's Motion to Compel (**Doc. 33**) is **DENIED**, and by December 16, 2009, Defendants shall:  (1) submit for *in camera* review, via hand-delivery to the undersigned's Chambers, all documents they claim are privileged under the Fifth Amendment, along with a written statement detailing why their withholding of such documents is justified; and (2) file and serve amended responses to Plaintiff's interrogatories, explaining why their answers cause a reasonable apprehension of self-incrimination.

IT IS FURTHER ORDERED that the depositions of the witnesses identified in Plaintiff's "Motion for Protective Order Postponing Depositions" (Doc. 34) shall be postponed until at least ten days after Defendants serve any and all documents they ultimately are ordered to produce.

---

[6] Defendants' broad invocation of Fifth Amendment rights also is difficult to reconcile with their civil lawsuit against Plaintiff in state court.  *See* Nov. 18th Order at 1 (highlighting Defendants' action in Haydar K. Hassan, *et al.*, v. Burt Hill, Inc., *et al.*, GD 09-016228 (Allegh. Cty. Ct. Comm. Pls. 2009)).  Should Defendants survive Plaintiff's preliminary objections in that case, their prosecution of the state court action would appear quite impracticable given their steadfast reliance on the privilege against self-incrimination.

IT IS SO ORDERED.


December 4, 2009                                          s\Cathy Bissoon
                                                          Cathy Bissoon
                                                          United States Magistrate Judge

cc (via email):

All Counsel of Record