IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BURT HILL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 09-1285 |
| | ) | |
| v. | ) | Magistrate Judge Bissoon |
| | ) | |
| HAYDAR HASSAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### **ORDER**

For the reasons that follow, Defendants will be ordered to produce to Plaintiff the documents and electronic storage devices submitted to the Court for *in camera* review.

By Order dated December 4, 2009, Defendants were directed to submit all documents they claimed were privileged under the Fifth Amendment, along with a written statement detailing why their withholding of such documents was justified. *See* Dec. 4th Order (Doc. 40) at 10. The Court emphasized that "[t]he relevant inquiry . . . is not whether the content of the document[s] is incriminatory, [but] whether the testimony inherent in the act of producing [them] is incriminatory." *Id.* at 6 (citation to quoted source omitted).

In response to the Order, Defendants have submitted "three removable flash drives used by Defendants Charles Fox, Jeff Wetzel, and John Kim," and "an external hard drive used by Defendant John Kim" ("the external storage devices," or "ESDs"). *See* Defs.' *in camera* stmt. at 1-2.[1]  Defendants also have submitted 560 pages of hard-copy documents, all of which are contained on the external storage devices. *Id.* at 2.

---

[1] To complete the record, Defendants' *in camera* written statement has been filed contemporaneously herewith, under seal. Although some discussion of Defendants' statement

Defendants argue that, by producing the ESDs, they would admit the existence, their possession, and the authenticity of the same. *See id.* at 2-3. Defendants claim, without explanation, that production of the documents contained in the ESDs likewise would be "testimonial." *See generally id.* at 3. Defendants assert that production of the withheld materials would create a reasonable apprehension of self-incrimination under the Computer Fraud and Abuse Act ("CFAA"). *Id.* at 5; *see also id.* at 7 (Plaintiff may attempt to show that Defendants used external storage devices to "access[] and store[ Plaintiff's] confidential and proprietary business information either without authorization or exceeding authorization in violation of the CFAA") (internal quotations omitted).

At the onset, the Court finds Defendants' arguments regarding their hard-copy documents particularly unpersuasive. Defense counsel has offered no meaningful justification, let alone legal support, as to why supposed doubts regarding the existence, possession, or authenticity of the ESDs somehow extends to independently existing documents.[2]

More fundamentally, Defendants' assertions of Fifth Amendment privilege regarding the documents and the ESDs fail for the same reasons indicated in the Court's December 4th Order. As the Court stated:

---

is necessary to explain the Court's rulings, the undersigned is concerned that revealing its full contents may unduly prejudice Defendants, given their expectation that the submission would be reviewed by the Court only. Because the undersigned cannot rule out the possibility that Defendants' written statement reveals mental impressions not intended for Plaintiff's eyes, the Court has filed the submission under seal.

[2] There is no evidence, or suggestion, that the documents withheld by Defendants were extracted from the ESDs and printed in hard copy form in furtherance of this litigation. Rather, Defendants' reliance on the ESDs appears to be an after-the-fact attempt to bring the documents within the scope of their Fifth Amendment privilege claims. In any event, Defendants have offered no reasoned basis for extending putative privilege claims regarding the ESDs to their hard-copy documents.

> How Defendants can show that their production would be testimonial is difficult to imagine. Defendants have made repeated offers to Plaintiff that it can have access to view the allegedly protected documents in a secure location in Defense counsel's office, upon assurances that Plaintiff will not retain and disseminate copies. . . . In addition, Defendants have produced a privilege log identifying approximately 400 pages of documents withheld on the basis of privilege against self-incrimination. . . . Through their conduct, Defendants have admitted the existence of allegedly privileged materials, and that such materials are within their possession or control. Likewise, it seems highly implausible that Defendants can, in good faith, object to the authenticity of documents they have offered for Plaintiff's viewing and have identified in their privilege log.

Dec. 4th Order at 5 (citations, internal quotations and alterations omitted).

A good number of the documents submitted for *in camera* review are the same as those identified in Defendants' initial privilege log. Although the remaining documents were contained in a later-produced supplemental privilege log, marked "submitted . . . for *in camera* review," Defendants' admissions regarding the existence and possession of the allegedly privileged documents, and Defense counsel's agreement to allow Plaintiff's inspection of them subject to certain conditions, apply to those documents with equal force.[3]

Similar concessions have been made regarding Defendants' electronic storage devices. At a Status Conference on November 4, 2009, the Court and opposing counsel had detailed discussions regarding the production of electronic media, including the scope of information required for production (*e.g.*, Defendants' home computers used only by family members were not subject to inspection, nor were Defendants' files regarding personal, rather than business, matters). At that time, Defense counsel acknowledged, in the presence of opposing counsel, Defendants' possession of portable electronic storage devices.

---

[3] The December 4th Order notwithstanding, Defendants still offer no challenge to the authenticity of the documents. *Cf.* Defs.' *in camera* stmt.

3

Perhaps even more telling, however, are Defendants' responses to Plaintiff's requests for production, in which Defendants affirmatively represented that they would "make available for inspection and examination . . . the requested electronic storage devices that were used by [them] while they were employed by Plaintiff." *See* Defs.' Resp. to Reqs. for Prod. (filed under Doc. 33-2) at 22. Defendants went on to say that, "[i]n light of [their] assertion of [the] privilege against self-incrimination, Defendants [would] not allow Plaintiff to actually view the electronic files contained in the [ESDs]." *Id.* This, of course, is the very type of content-based privilege assertion that has been squarely rejected under the law,[4] and, by agreeing to produce the ESDs, Defendants have conceded their existence, possession and authenticity.

The determination of whether a production is "testimonial" depends "on the facts and circumstances of [the] particular case." In re Foster, 188 F.3d 1259, 1270 (10th Cir. 1999) (citation to quoted source omitted). Testimonial privilege does not attach where "[t]he existence and location of the [materials] are a foregone conclusion," and the claimant's production "adds little or nothing to the sum total of the [requesting party's] information by conceding that he in fact has the [materials]." *See* U.S. v. Ponds, 454 F.3d 313, 319-20 (D.C. Cir. 2006) (citation to quoted, binding authority omitted). Under the circumstances, "no constitutional rights are touched" because "[t]he question is not of testimony but of surrender." Fisher v. U.S., 425 U.S. 391, 411 (1976) (citation to quoted source omitted, emphasis added).

As seen above, the existence and location of the materials in this case are a foregone conclusion. Defendants have routinely and consistently acknowledged possession, and, on numerous occasions, have offered to allow Plaintiff's inspection of the materials, subject to

---

[4] *See* Dec. 4th Order at 4 ("[a] witness cannot avoid compliance with a [discovery request] merely by asserting that the item of evidence which he is required to produce contains incriminating writing") (quoting binding Third Circuit authority).

4

restrictions motivated by the potentially incriminating nature of their contents.  As explained above, however, the mere fact that the requested materials contain information that may be incriminating is not a legitimate basis for withholding production.  *See* discussions *supra*; *see also, e.g.*, U.S. v. Teeple, 286 F.3d 1047, 1050-51 (8th Cir. 2002) (Fifth Amendment privilege did not apply where claimant had, through course of litigation, admitted existence, possession and location of requested documents).

Finally, the Court rejects Defendants' suggestion that a waiver of their Fifth Amendment rights must be found to compel production.  *See generally* Defs.' *in camera* stmt. at 4 (citing precedent holding that "courts must indulge every reasonable presumption against waiver").  Although a case for waiver can be made,[5] it is unnecessary for the Court to reach this issue.  As another court applying the "foregone conclusion" standard explained:

> No question of waiver can arise unless and until it has first been determined that a privilege exists, and it is the existence of the privilege that is [unapparent] here.  In other words, there is no privilege unless production is testimonial, and production is not testimonial if, as a result of a prior [disclosure], the existence, possession, and authenticity of the documents are all foregone conclusions.  [Under the circumstances,] there [is] no question regarding waiver because there . . . simply [is] no privilege to waive.

Boston Children's Heart Found., Inc. v. Nadal-Ginard, 1994 WL 129648, *8 n.3 (D. Mass. Mar. 31, 1994) (citations omitted); *see also* U.S. v. Gippetti, 2005 WL 2980594, *3 n.7 (3d Cir. Nov. 8, 2005) (where production carries no testimonial significance, court need not reach issue of waiver).

---

[5] *Cf.* In re Stoecker, 103 B.R. 182, 187 (Bankr. N.D. Ill. Jul. 26, 1989) ("[i]t is a well-established principle that once a witness has freely [disclosed] incriminating facts, he cannot refuse to testify as to the details, because the [d]isclosure of a fact waives the privilege as to the details") (citations and internal quotations omitted).

For all of these reasons, Defendants have failed to demonstrate that the documents and external storage devices submitted for *in camera* review are shielded from production under the Fifth Amendment.  It is therefore ORDERED that Defendants shall, as soon as practicable, retrieve from the Court all materials submitted for *in camera* review[6] and produce the same to Plaintiff, **no later than 12:00 p.m. on <u>January 8, 2010.</u>**

IT IS SO ORDERED.


January 4, 2010                                                     s\Cathy Bissoon
                                                                    Cathy Bissoon
                                                                    United States Magistrate Judge

cc (via email):

All Counsel of Record

---

[6] Defense counsel shall contact the undersigned's Chambers via telephone and make arrangements for retrieving the materials submitted to the Court.

6